1

```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF OHIO
                         EASTERN DIVISION

UNITED STATES OF AMERICA,     )  Case No. 1:19-cr-132
                              )  Akron, Ohio
           Plaintiff,         )  July 30, 2019
                              )  2:13 p.m.
      vs.                     )
                              )
HARGIS HALL,                  )
                              )
           Defendant.         )


                 TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE KATHLEEN B. BURKE
               UNITED STATES MAGISTRATE JUDGE

                   CHANGE OF PLEA HEARING

APPEARANCES:

For the Plaintiff:
      Office of the U.S. Attorney
      Northern District of Ohio
      By:  Elliot D. Morrison, Esq.
      Suite 400
      801 Superior Avenue, W
      Cleveland, Ohio  44113
      (216) 622-3919
      elliot.morrison@usdoj.gov
```

```
                    Mary L. Uphold, RDR, CRR
      Thomas D. Lambros Federal Building and U.S. Courthouse
                    125 Market Street, Room 337
                    Youngstown, Ohio  44503-1780
                         (330) 884-7424
                    Mary_Uphold@ohnd.uscourts.gov


         Electronic recording transcribed by mechanical
      stenography from a digital audio recording; transcript
      produced by computer-aided transcription.
```

1    **APPEARANCES (CONTINUED):**

2    **For the Defendant:**
          Rhonda L. Kotnik, Esq.
3          Suite 401
          333 South Main Street
4          Akron, Ohio  44308
          (330) 253-5533
5          rhondalkotnik@gmail.com

6
                                    - - -
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2                           -  -  -

 3            THE CLERK:  All rise.  This Honorable United

 4   States Court for the Northern District of Ohio is now open

 5   for the transaction of business.  The Honorable Kathleen B.

 6   Burke presiding.

 7            You may be seated.

 8            The case before the court carries Case Number

 9   1:19-cr-132, United States of America versus Hargis Hall.

10            THE COURT:  So I am going to ask counsel to

11   introduce themselves.  First counsel for the United States.

12            MR. MORRISON:  Thank you, Your Honor.  AUSA Elliot

13   Morrison on behalf of the United States.

14            THE COURT:  And counsel for the defendant.

15            MS. KOTNIK:  Good afternoon, Your Honor.  Rhonda

16   Kotnik on behalf of Mr. Hall.

17            THE COURT:  All right.  And I have been advised

18   that Mr. Hall does wish to plead guilty to Counts 1 and 2 of

19   the indictment.  I will talk with him about his right to

20   change his mind about that as we proceed here.  But the

21   first thing I need to address is the consent, his consent to

22   my jurisdiction in this matter.

23            I am looking to see if I (unintelligible) -- here

24   it is.

25            All right.  So, Mr. Hall, I'm holding up a
```

4

1    document that's called "Consent to order of referral to

2    Magistrate Judge for purposes of receiving defendant's

3    guilty plea."  I am going to turn to the second page and ask

4    if your signature is on the top line on the right side of

5    the page.

6              THE DEFENDANT:  Yes, ma'am, I signed that paper.

7              THE COURT:  And before you signed this document,

8    Mr. Hall, did you have a chance to read it and to discuss it

9    with your attorney, Ms. Kotnik?

10             THE DEFENDANT:  Yes, ma'am.

11             THE COURT:  You understand that you have the right

12   to offer your plea of guilty to a United States district

13   judge, and that by submitting this consent, you are giving

14   up that right and you are agreeing that I may receive your

15   plea; do you understand that?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  Okay.  Is it your wish to consent to

18   my jurisdiction in this matter?

19             THE DEFENDANT:  Yes, ma'am.

20             THE COURT:  All right.  Your consent is accepted.

21             I'm now going to review the purposes of this

22   proceeding with you, Mr. Hall.  The purposes include

23   establishing that you are competent to make a plea,

24   establishing that your plea is free and voluntary, making

25   certain that you understand the charges made against you,

1   the penalties associated with those charges and the

2   constitutional rights that you will be giving up if you

3   plead guilty.

4            After we cover those things, I will ask questions

5   of you and the prosecutor to determine whether there is a

6   factual basis for a plea.

7            And after we cover those things, I will ask you

8   how you plead.

9            I do want you to understand that even though

10  you've expressed an intent to plead guilty, you have the

11  right to change your mind and to stand by your original plea

12  of not guilty at any time up until the end of the proceeding

13  when I ask you how you plead.

14           Do you understand those instructions?

15           THE DEFENDANT:  Yes, ma'am.

16           THE COURT:  During the proceeding today, Mr. Hall,

17  I will be asking you a number of questions.  We have a court

18  reporter here who will be recording my questions and your

19  answers.  You will need to put your answers in words because

20  she cannot record a nod of the head or other gesture.

21           If you don't understand a question, you should say

22  so and I will do my best to explain it to you.

23           Also, if you wish to speak with your attorney, you

24  may do that at any time during the hearing.

25           I do want you to know that the purpose of my

1    questions is to determine whether you are competent to

2    understand the charges against you and competent to enter a

3    plea.  The questions are not intended to embarrass you.

4              Do you understand those instructions?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  Mr. Hall, you do have a right to

7    remain silent.  You're not required to make any statement.

8    And any statement you do make may be used against you.

9              Before I receive your plea, I will need to ask you

10   a number of questions to make sure that your plea is valid.

11   By answering those questions, you will be making statements

12   against your interest and you will incriminate yourself.

13             Do you understand that by proceeding here today

14   with a plea of guilty, you will necessarily give up your

15   right to remain silent?

16             THE DEFENDANT:  Yes.  Yes, ma'am.

17             THE COURT:  Now the courtroom deputy will place

18   the defendant under oath.

19             THE CLERK:  Please raise your right hand.

20        (Defendant sworn.)

21             THE COURT:  Mr. Hall, you have now been sworn and

22   you are under oath to tell the truth.  Your answers to my

23   questions will be subject to the penalties for perjury if

24   they are not truthful.

25             Do you understand that instruction?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  I am going to start with some

3    questions that relate to your competence to enter a plea

4    today.  I'll start by asking you to state your full name.

5          THE DEFENDANT:  Hargis A. Hall.

6          THE COURT:  Okay.  And how old are you, Mr. Hall?

7          THE DEFENDANT:  Forty-six.

8          THE COURT:  And are you a citizen of the United

9    States?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  How far did you go in school,

12   Mr. Hall?

13          THE DEFENDANT:  I got my GED and I went to some

14   college.

15          THE COURT:  Okay.

16          THE DEFENDANT:  Technical college.

17          THE COURT:  What kind of college?

18          THE DEFENDANT:  Technical college.

19          THE COURT:  Okay.  And what were you studying at

20   the technical college?

21          THE DEFENDANT:  Motorcycle technologies.

22          THE COURT:  Okay.  I take it from your answers to

23   my questions, Mr. Hall, that you can both speak and

24   understand English, correct?

25          THE DEFENDANT:  Yes, ma'am.

8

1          THE COURT:  And are you also able to read and

2     write in English?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Are you currently on probation, parole

5     or supervised release for any other state or federal

6     conviction?

7          THE DEFENDANT:  No, ma'am.

8          THE COURT:  Within the last year, Mr. Hall, have

9     you been hospitalized or treated for either a mental

10     illness, a drug addiction or an alcohol addiction?

11          THE DEFENDANT:  No, ma'am.  I've been in state

12     prison for the last year.

13          THE COURT:  I understand that.  Sometimes when in

14     prison there are treatment programs for those kind of

15     things.  So you're saying that you have not been treated?

16          THE DEFENDANT:  No, ma'am.

17          THE COURT:  Okay.

18          THE DEFENDANT:  My time wasn't long enough for me

19     to get into one --

20          THE COURT:  Okay.

21          THE DEFENDANT:  -- is what they told me.  I signed

22     up for the IOP and the BOP or BIP or something like that.

23     And they said they take other -- my sentence wasn't long

24     enough for me to be there to do it, so ...

25          THE COURT:  Okay.  In the last 24 hours, Mr. Hall,

1  have you taken any medication or drugs or alcohol?

2          THE DEFENDANT:  No, ma'am.

3          THE COURT:  Do you feel that you understand why we

4  are here today, what the purpose of this proceeding is?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Can you explain that in your own

7  words, your understanding of what -- why we are here today?

8          THE DEFENDANT:  To plead guilty to some mistakes

9  that I've made in the past.

10          THE COURT:  Okay.  Ms. Kotnik, do you have any

11  doubts or concerns about Mr. Hall's competence to plead

12  today?

13          MS. KOTNIK:  No, Your Honor.

14          THE COURT:  And, Mr. Morrison, do you have any

15  concerns about Mr. Hall's competence?

16          MR. MORRISON:  No, Your Honor.

17          THE COURT:  Mr. Hall, I am going to talk with you

18  now about your right to counsel.  At the time of your

19  arraignment, you were advised that you have a right to an

20  attorney at every stage of the proceedings in this case, and

21  that if you are not able to afford to hire an attorney, the

22  court could appoint one without cost to you.

23          Do you understand your right to an attorney?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  The court previously appointed Rhonda

10

1    Kotnik, who is seated next to you, to be your attorney.

2         Do you understand that you are represented by

3    Ms. Kotnik for this case?

4         THE DEFENDANT:  Yes, ma'am.

5         THE COURT:  Have you had enough time to discuss

6    the charges made against you in the indictment with

7    Ms. Kotnik -- with Ms. Kotnik?

8         THE DEFENDANT:  Yes, her and I went over the case

9    a few times.

10        THE COURT:  Okay.  And have you told Ms. Kotnik

11   everything you know about the case, including the facts of

12   the case?

13        THE DEFENDANT:  Yes, ma'am.

14        THE COURT:  Are you completely satisfied with

15   Ms. Kotnik's representation of you and the advice that she

16   has given you?

17        THE DEFENDANT:  Yes, ma'am.

18        THE COURT:  I am now going to talk with you about

19   the various constitutional rights you will be giving up if

20   you plead guilty, Mr. Hall.  I'll go through those one by

21   one.

22        The first is your right to a trial, including the

23   right to a jury trial.  You do have the right to stand by

24   your plea of not guilty and to require the government to

25   prove its case at trial.

1          You would have a right to a trial by jury and the

2     right to the assistance of counsel at trial.

3          At trial you would be presumed innocent.  You

4     would not have to prove you're innocent.  Rather, the

5     government would be required to prove you guilty by

6     competent evidence beyond a reasonable doubt as to every

7     element of the offenses charged against you.

8          Do you understand your right to a trial, including

9     the right to jury trial?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Do you understand that by pleading

12     guilty, you will be giving up that right?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  You have a right to compulsory

15     process.  What that means is that if the case went to trial,

16     you would have the right to have the court issue subpoenas

17     to require the attendance of witnesses who would testify in

18     your defense.

19          You understand that right?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  You understand that by pleading

22     guilty, you will be giving up that right?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  You have the right to confront

25     witnesses.  If the case went to trial, you would have the

12

1    right to see, to hear and to have your attorney

2    cross-examine every witness that the government would

3    present against you.

4               Do you understand that right?

5               THE DEFENDANT:  Yes, ma'am.

6               THE COURT:  And do you understand that by pleading

7    guilty, you will be giving up that right?

8               THE DEFENDANT:  Yes, ma'am.

9               THE COURT:  You have the right to remain silent.

10   If the case went to trial, you would have the right to

11   remain silent at trial.  You could testify if you chose to,

12   but you could also choose not to testify.

13              If you chose not to testify, the court would

14   instruct the jury that the jury could draw no inference or

15   suggestion of guilt from the fact that you chose not to

16   testify.

17              Do you understand your right to remain silent at

18   trial?

19              THE DEFENDANT:  Yes, ma'am.

20              THE COURT:  Do you understand that by pleading

21   guilty, you will be giving up that right?

22              THE DEFENDANT:  Yes, ma'am.

23              THE COURT:  You have a right against

24   self-incrimination.  As I mentioned earlier, if you proceed

25   with a plea of guilty, I will need to ask you questions in

13

1   order to satisfy myself that there is a valid basis for a

2   guilty plea.  In answering those questions, you will give up

3   your right to -- not to incriminate yourself and you will

4   have to acknowledge your guilt in order to make a valid

5   guilty plea.

6           Do you understand your right not to incriminate

7   yourself?

8           THE DEFENDANT:  Yes, ma'am.

9           THE COURT:  Do you understand that by pleading

10  guilty, you will be giving up that right?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  In summary, if you plead guilty and if

13  the district judge accepts your plea, you will give up your

14  right to a trial and the other rights that I've just

15  described to you.  There will be no trial, and the district

16  judge will enter a judgment of guilty and will sentence you

17  based on your guilty plea after considering your presentence

18  report.

19          Do you understand that?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  Do you understand that the offenses to

22  which you are pleading guilty are felony offenses, and that

23  a judgment of guilty may deprive you of valuable civil

24  rights, including the right to the vote, the right to hold

25  public office, the right to serve on a jury and the right to

14

1    possess a firearm?

2            THE DEFENDANT:  Yes, ma'am.

3            THE COURT:  I am now going to go over the nature

4    of the charges made against you in the indictment.

5            Mr. Hall, have you received a copy of the

6    indictment?

7            THE DEFENDANT:  Yes, ma'am.

8            THE COURT:  There are two counts in the

9    indictment, Mr. Hall.

10           Count 1 charges you with violating 21, United

11   States Code, Sections 841(a)(1) and (b)(1)(C), which

12   pertains to distribution of controlled substances.

13           Count 2 charges you with violating 21, United

14   States Code, Section -- Sections 841(a)(1) and (b)(1)(A),

15   which also pertains to distribution of controlled

16   substances.

17           Have you discussed with your attorney, Ms. Kotnik,

18   the charges in Counts 1 and 2 of the indictment?

19           THE DEFENDANT:  Yes, ma'am.

20           THE COURT:  Do you understand those charges?

21           THE DEFENDANT:  Yes, ma'am.

22           THE COURT:  I'm now going to go through the

23   elements of the offense, of the offenses charged in Counts 1

24   and 2.  There are two elements to each of those offenses.

25   The elements are set forth at page 3, paragraph 11 of your

1    plea agreement if you would like to follow along.

2            The two elements are, one, the defendant, which

3    would be you, Mr. Hall, knowingly or intentionally

4    distributed a controlled substance; and two, the defendant

5    knew at the time of distribution that the substance was a

6    controlled substance.

7            Mr. Hall, do you understand each of those

8    elements?

9            THE DEFENDANT:  Yes, ma'am.

10           THE COURT:  Do you have any questions regarding

11   either of the two elements?

12           THE DEFENDANT:  No, ma'am.

13           THE COURT:  Ms. Kotnik, have you gone over the

14   elements of the offenses with Mr. Hall?

15           MS. KOTNIK:  Yes, Your Honor.

16           THE COURT:  Do you believe that he understands the

17   elements?

18           THE DEFENDANT:  Yes, he does.

19           THE COURT:  I am now going to ask Mr. Morrison, as

20   counsel for the United States, to state the penalties

21   associated with the charges in the indictment, including any

22   maximum possible penalty, any minimum penalty, or if any

23   forfeiture, applicable costs that would be imposed, special

24   assessment.  And with regard to the penalties, the maximum

25   penalties also, including a fine or a term of supervised

1    release.

2              MR. MORRISON:  Thank you, Your Honor.

3              Count 1, as you mentioned, is a violation of 21,

4    U.S.C., Section 841, punishable under (b)(1)(C) of that

5    provision.  And that's subject to up to 20 years in prison,

6    up to a $1 million fine, a mandatory minimum of three years

7    of supervised release and up to life on supervised release.

8              Count 2 is punishable under Section 841(b)(1)(A),

9    which is for a higher weight of methamphetamine in this

10   case.  And that's punishable by up to life in prison,

11   a mandatory minimum of ten years in prison, a maximum

12   statutory fine of $10 million, a minimum period of

13   supervised release by statute of five years, and again, up

14   to life on supervised release.

15             Both of Counts 1 and 2 each require a $100 special

16   assessment, for a total of $200, due immediately upon

17   sentencing.

18             As Your Honor indicated, the court is also

19   empowered to order the defendant to pay costs of prosecution

20   and sentence, including but not limited to imprisonment,

21   community confinement, home detention, probation and

22   supervised release.

23             Restitution could be ordered, but we don't believe

24   that that's at issue.  We believe that this is, under the

25   law, a victimless crime.

1          There's also, of course, additional penalties that

2    could be imposed if the defendant were to be placed on

3    supervised release and then to violate the conditions of

4    supervised release.

5          THE COURT:  There is a forfeiture provision in the

6    indictment, correct, Mr. Morrison?

7          MR. MORRISON:  Thank you for drawing my attention

8    to that, Your Honor.  Yes.  There is a general forfeiture

9    count in the indictment.  The United States has elected not

10   to pursue forfeiture in this -- in this case.

11         THE COURT:  All right.

12         MR. MORRISON:  So there will be no forfeiture

13   sought.

14         THE COURT:  I take it that there are no

15   immigration consequences related to this matter?

16         MR. MORRISON:  Yes, correct.  The defendant is a

17   United States citizen.  This provision is only in it to make

18   him and every other defendant aware of the possibility, but

19   we do not believe that that's at issue for him.

20         THE COURT:  With regard to whether the offenses

21   are probationable, Mr. Morrison, it appears that one is,

22   because it doesn't have a mandatory minimum in this count?

23         MR. MORRISON:  That's correct, Your Honor.

24         THE COURT:  Count 2 is not probationable, correct?

25         MR. MORRISON:  I apologize for interrupting, but

1    that is exactly correct.

2            THE COURT:  All right.  So, Mr. Hall, did you

3    understand what Mr. Morrison said about the potential

4    penalties associated with the counts in the indictment?

5            THE DEFENDANT:  Yes, ma'am.

6            THE COURT:  Mr. Morrison mentioned a potential

7    term of supervised release following a term of imprisonment.

8            Do you understand that if you are placed on

9    supervised release and if you violate a condition of your

10   supervised release, you may be sent back to prison for the

11   violation?

12           THE DEFENDANT:  Yes, ma'am.

13           THE COURT:  Do you also understand that under some

14   circumstances, the term for a violation of supervised

15   release, when added to the initial term, may exceed the

16   maximum for the underlying offense?

17           Do you understand that?

18           THE DEFENDANT:  Can you repeat that?

19           THE COURT:  I wasn't very clear, was I?

20           So if you're sent- -- if you finished your prison

21   term and you're on supervised release and you violate your

22   supervised release, you can be sent back to prison.  And in

23   some circumstances, the additional time that you serve for

24   the violation, when you add it to your original term for the

25   offense that you were convicted of, those two together, can

1    sometimes be greater than the maximum for the original

2    offense.

3              Do you understand that?

4              THE DEFENDANT:  Yeah.

5              THE COURT:  Okay.

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  Mr. Hall, is your -- I am going to ask

8    you some questions related to the voluntariness of your plea

9    agreement and your plea.

10             Is your decision to plead guilty a decision that

11   you have made freely without any coercion?

12             THE DEFENDANT:  Yes.  Yes, ma'am.

13             THE COURT:  Has anyone threatened you or

14   threatened anyone else or forced you in any way to plead

15   guilty?

16             THE DEFENDANT:  No, ma'am.

17             THE COURT:  I have been advised that you and your

18   attorney have entered into a plea agreement with counsel for

19   the government, correct?  Is that correct?  You have a plea

20   agreement?

21             THE DEFENDANT:  Oh, yes.  Yes, ma'am.

22             THE COURT:  I am going to hold up what's been

23   provided to me as the plea agreement for the purpose of

24   having you identify it.

25             The plea agreement has a set of initials in the

1     lower right corner of each page.  The initials are HH.

2             Did you place those initials there?

3             THE DEFENDANT:  Yes, ma'am.

4             THE COURT:  Okay.  And then on the last page of

5     the plea agreement there are some signatures, Mr. Hall.

6             Is your signature on the top line on that last

7     page?

8             THE DEFENDANT:  Yes, ma'am.

9             THE COURT:  And, Ms. Kotnik, your signature is on

10    the second line under Mr. Hall's, correct?

11            MS. KOTNIK:  That's correct, Your Honor.

12            THE COURT:  And, Mr. Morrison, yours is on the

13    third line, correct?

14            MR. MORRISON:  Yes, Your Honor.

15            THE COURT:  Mr. Hall, before you signed the plea

16    agreement, did you have an opportunity to read it and

17    discuss it with your attorney?

18            THE DEFENDANT:  Yes, ma'am.

19            THE COURT:  Do you feel that you understand the

20    terms of the plea agreement?

21            THE DEFENDANT:  I do.

22            THE COURT:  All right.  I'm now going to ask

23    Mr. Morrison to state the substance of the plea agreement.

24    After he does that, I will ask Ms. Kotnik and Mr. Hall if

25    they agree with what he has said.

1          Mr. Morrison.

2          MR. MORRISON:  Thank you, Your Honor.  As

3    indicated, the defendant's agreed to plead guilty to both

4    charges against him in the indictment, Counts 1 and 2, and

5    the government has agreed not to bring any other charges

6    against the defendant for violations known to our office on

7    the date of the execution of this agreement as it relates to

8    this investigation.

9          The parties have also entered into certain

10   stipulations as it concerns the United States Sentencing

11   Guidelines.  We've agreed to recommend that the court adopt

12   these stipulations.  But the defendant understands that

13   these are simply recommendations and that they're not

14   binding on the court.

15         Specifically, in paragraph 17, we've agreed to

16   recommend a base offense level of 50 -- of 30 under

17   2D1.1(c)(4), that being for 50 grams or more of actual

18   methamphetamine.

19         And the government and the defendant agreed that

20   unless otherwise agreed to below, the parties agree that no

21   other specific offense characteristics or adjustments or

22   departures apply, except for the possible application of the

23   safety valve provision, should the defendant choose to avail

24   himself of that.

25         And based on those stipulations, the parties have

1    agreed to jointly recommend a sentence in the advisory

2    guidelines range as described in paragraph 14.

3           The parties have no agreement about what

4    defendant's criminal history category is, and under- -- and

5    the defendant understands that will be determined by the

6    court after the preparation of a PSR.

7           I should state that Ms. Kotnik and I, however,

8    have conferred about this, and it's our understanding and

9    expectation that it's likely he'll fall in Criminal History

10   Category II.

11          The defendant also agrees to waive most of his

12   appeal rights.  Specifically, all rights other than those

13   specifically set forth as preserved in paragraph 20 of the

14   plea agreement.  Those being the right to appeal a

15   punishment in excess of the statutory minimum, or a sentence

16   to the extent it exceeds the maximum of the guidelines range

17   using the stipulations in this agreement and the criminal

18   history category that's found applicable by the court.  And,

19   of course, he also always maintains the ability to pursue

20   remedies for -- under collateral attack for claims of

21   ineffective assistance of counsel or prosecutorial

22   misconduct.

23          The defendant also waives certain statutory

24   defenses, such as the statute of limitations.

25          And there are some additional miscellaneous

1    provisions in here, but I think that summarizes the sum and

2    substance of the agreement, unless Your Honor would like me

3    to go into more detail on anything else.

4                THE COURT:  No.  We will cover the factual basis

5    for the agreement separately.

6                MR. MORRISON:  Thank you.

7                THE COURT:  Mr. -- Ms. Kotnik, let me ask first

8    whether you agree with Mr. Morrison's summary of the plea

9    agreement and whether you have any changes or addition to

10   make to what he has said.

11               MS. KOTNIK:  Judge, I do agree, we do agree with

12   the summary.

13               THE COURT:  Okay.  Mr. Hall, do you agree with

14   what Mr. Morrison has said and do you have any changes?

15               THE DEFENDANT:  I agree, and I'm fine.

16               THE COURT:  Mr. Hall, has anyone, including either

17   your attorney, the attorney for the United States or the

18   court made any promise to you other than what's contained in

19   the plea agreement in order to persuade you to plead guilty?

20               THE DEFENDANT:  No, ma'am.

21               THE COURT:  I am now going to discuss a few

22   matters of sentencing with you.  First I'm going to hold up

23   a document that's called a sentencing table.

24               Have you seen that document?

25               THE DEFENDANT:  Yes, ma'am.

1      THE COURT:  And do you understand how the

2  sentencing table works?

3      THE DEFENDANT:  It was explained to me by my

4  lawyer, by my attorney.

5      THE COURT:  I'm going to give you an example which

6  has nothing to do with your case, but just for the purpose

7  of making sure that you understand how the table works, with

8  the offense levels down the left side and the criminal

9  history category at the top.

10      If we had an offense level of 3 with a criminal

11  history category of VI, can you tell me what the guideline

12  range would be for that?

13      THE DEFENDANT:  3 to 9 months.

14      THE COURT:  And that is in months, correct?

15      THE DEFENDANT:  Yes, ma'am.

16      THE COURT:  All right.  Mr. Hall, I don't want to

17  know what you discussed with your attorney, but whether

18  you've had an opportunity to discuss with your attorney how

19  the guidelines might apply to your case.

20      Have you discussed that topic?  Not the specifics

21  of what you discussed.

22      MS. KOTNIK:  (Unintelligible.)

23      THE DEFENDANT:  What we discussed, yes, yes,

24  ma'am.

25      THE COURT:  I'm now going to direct your attention

1    to paragraphs 12 through 19 of the plea agreement.  This

2    paragraph starts on page 3 and goes over to page 5.

3         Mr. Hall, do you understand that these paragraphs

4    discuss the application of the sentencing guidelines to your

5    case?

6         THE DEFENDANT:  Yes, I understand that.

7         THE COURT:  Okay.  In looking at paragraph 17, do

8    you understand that the parties have no agreement as to what

9    criminal history category applies to your case, and that the

10   district court will determine your criminal history category

11   after reviewing the presentence investigation report?

12        MS. KOTNIK:  (Unintelligible.)

13        THE DEFENDANT:  Yes, yes, Your Honor.

14        THE COURT:  Okay.  And I think your attorney

15   clarified for you.  I know Mr. Morrison did say that your

16   attorney and he believed you're a Criminal History Category

17   II, but I just want to make sure that you understand that

18   the final decision on that will be made by the district

19   judge.

20        THE DEFENDANT:  Yes, ma'am.

21        THE COURT:  Okay.  And looking at paragraph 13, do

22   you understand that there is no agreement between the

23   parties as to the guideline range that applies to your case,

24   and that the district judge will determine the guideline

25   range after reviewing the presentence report?

1      THE DEFENDANT:  Yes, ma'am.

2      THE COURT:  I am going to direct your attention

3  now to paragraph 15 of your plea agreement, which is at the

4  bottom of page 4.  That paragraph reads, "Sentencing

5  Recommendations Not Binding on the Court."  It says,

6  "Defendant understands that the recommendations of the

7  parties will not be binding on the court, that the court

8  alone will decide the advisory guideline range under the

9  sentencing guidelines, whether there is any basis to depart

10  from that range or impose a sentence outside the guideline

11  range and what sentence to impose.

12      "Defendant further understands that once the court

13  has accepted defendant's guilty plea, defendant will not

14  have the right to withdraw such a plea if the court does not

15  accept the sentencing recommendations made on defendant's

16  behalf or if defendant is otherwise dissatisfied with the

17  sentence."

18      I want to make sure that you understand that

19  paragraph, Mr. Hall.  Do you understand that if I recommend

20  that the district judge accept your plea and if the district

21  judge accepts that recommendation, you will not be able to

22  withdraw your guilty plea?

23      THE DEFENDANT:  Yes, ma'am.

24      THE COURT:  You also understand that sentencing

25  rests within the discretion of the court?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  And that federal law requires the

3     court to impose a sentence that is reasonable, and that the

4     court must consider the guideline range in determining what

5     is a reasonable sentence?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  As mentioned earlier, the court will

8     determine the guideline range after determining what the

9     criminal history category is based upon a presentence

10    report.

11         Do you understand that?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  Do you understand that the sentence

14    the court imposes on you may be different from any estimate

15    that your attorney may have given you?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  And that you understand that if the

18    court imposes a sentence that is different than what is

19    recommended by either your attorney or the attorney for the

20    government, you will not have the right to withdraw your

21    guilty plea, correct?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  I am now going to direct your

24    attention to paragraph 20 of the plea agreement, which is on

25    page 6.  Mr. Morrison did review this paragraph.  This is

28

1    the paragraph in which you waive, that is, give up your

2    right to appeal or to attack your conviction or sentence in

3    a post-conviction proceeding with certain limited

4    exceptions.

5            The exceptions are if the court impose a

6    sentence -- imposes a sentence that is greater than the

7    statutory maximum, or if the court imposes a sentence that

8    is greater than the guideline range determined under the

9    guidelines in accordance with the parties' sentencing

10   stipulations and using the criminal history category found

11   applicable by the court.

12           Also, you reserve the right, your rights with

13   respect to any claim of ineffective assistance of counsel or

14   prosecutorial misconduct.

15           With those exceptions, you are giving up your

16   right to appeal your conviction and sentence or to attack

17   your conviction and sentence in a post-conviction

18   proceeding.

19           Do you understand that, Mr. Hall?

20           THE DEFENDANT:  Yes, ma'am.

21           THE COURT:  Do you understand that under some

22   circumstances, the government may have the right to appeal

23   the sentence that is imposed?

24           THE DEFENDANT:  Yes, ma'am.

25           THE COURT:  Do you understand that parole has been

1    abolished, and that if you are sentenced to prison, you will

2    not be released on parole?

3            THE DEFENDANT:  Isn't it -- yes, ma'am.

4            THE COURT:  Okay.  Mr. Hall, having discussed your

5    rights with you, do you still wish to proceed with the

6    guilty plea?

7            THE DEFENDANT:  Yes, ma'am.

8            THE COURT:  Okay.  I'm now going to ask

9    Mr. Morrison to review the facts that would support a guilty

10   plea in this case.  The facts are set forth in paragraph 22

11   of the plea agreement, which is on page 7.  After

12   Mr. Morrison states the facts, I will ask if you agree with

13   what he has said as well.

14           MR. MORRISON:  Thank you, Your Honor.

15           First, on August 28th, 2018, in Ashtabula, Ohio,

16   the defendant knowingly and intentionally distributed about

17   27.35 grams of a mixture and substance containing a

18   detectable amount of methamphetamine, which is a Schedule II

19   controlled substance.

20           Specifically, he agreed to and did sell an ounce

21   of crystal methamphetamine to a person identified as person

22   1 for $700, and testing revealed that to be the

23   aforementioned amount of methamphetamine.

24           Then, on September 4th, 2018, again in Ashtabula,

25   Ohio, both places be- -- Ashtabula, Ohio, being in the

1    Northern District of Ohio, Eastern Division, the defendant

2    knowingly and intentionally distributed approximately 55.4

3    grams of pure methamphetamine, a Schedule II controlled

4    substance.

5         And specifically, on that date, he agreed to and

6    did sell 2 ounces of crystal methamphetamine to person 1 for

7    $1,400, and testing later revealed that to be approximately

8    56 grams of a mixture or substance that was tested to be 99

9    percent pure methamphetamine, resulting in the 55.4 grams of

10   pure methamphetamine figure.

11        And the defendant knew at both of the above times

12   that the substances he was selling and distributing were, in

13   fact, controlled substances.

14        THE COURT:  Mr. Hall, do you agree with the facts

15   that Mr. Morrison has stated?

16        THE DEFENDANT:  Yes, ma'am.  That's what happened.

17        THE COURT:  Do you have any changes that you wish

18   to make in the facts that he has stated?

19        THE DEFENDANT:  I mean, no.  I mean, I didn't have

20   the drugs on me.  I mean, it wasn't like I was the

21   distributor of the drugs.  Just I called someone to get them

22   procured for these people.  But in the end, the fact is,

23   yes, I did sell the drugs to the guy.

24        THE COURT:  All right.  So you admit that the

25   facts that Mr. Morrison stated and that are set forth in

1    paragraph 22 are true?

2            THE DEFENDANT:  Yes, ma'am.

3            THE COURT:  Mr. Morrison, is there any right or

4    any procedural provision that I failed to take account of

5    before I ask Mr. Hall how he pleads?

6            MR. MORRISON:  No, Your Honor.  Thank you.

7            THE COURT:  Ms. Kotnik?

8            MS. KOTNIK:  Okay.

9            THE DEFENDANT:  I had to call somebody and have it

10   brought to me.  It wasn't that I was the one that had all

11   the drugs and was selling the drugs.  I made the phone call

12   and went and picked it up.  And then the second time I made

13   the phone call I had someone bring it to me.

14           MR. MORRISON:  Your Honor, I might be able to

15   short-circuit something that's going on here by just adding

16   to that that the government would not disagree that the

17   defendant was something of a middleman in both of these drug

18   deals.

19           That when he was contacted to -- about procuring

20   this methamphetamine, we don't believe that he had the

21   methamphetamine on him at the time he was contacted.  It's

22   our understanding that on both occasions he was contacted

23   for methamphetamine.  He then reached out to a third party

24   and arranged to obtain the requested methamphetamine from

25   that third party, which he did obtain, and then almost

1     immediately sell to person 1 as described in the factual

2     basis.

3                 I think that's -- I think that's what he's trying

4     to bring to the court's attention.

5                 THE COURT:  I think that sounds like what Mr. Hall

6     was trying to say.

7                 So the question is whether anything about that

8     changes whether there is a factual basis for a plea of

9     guilty, and it sounds to me like he did sell the drugs, even

10    though he did not -- that -- even though he was the

11    middleman in the sales transaction, he got them from

12    somebody else and then he sold them.

13                Am I correct, Mr. Morrison?

14                MR. MORRISON:  That is correct, Your Honor.

15                THE COURT:  And, Ms. Kotnik?

16                MS. KOTNIK:  Yes, Your Honor.

17                THE COURT:  So I just want to make sure that we

18    don't have any issues with whether there's a factual basis

19    for the guilty plea.  It doesn't sound to me like there is.

20                And you're in agreement with that, Ms. Kotnik?

21                MS. KOTNIK:  Yes, Your Honor, yes.

22                THE COURT:  All right.  And so I think I already

23    did ask, but if I didn't, I will ask you now, Mr. Hall, do

24    you admit that the facts stated are true?

25                THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  I'm now prepared to receive your plea,

2     Mr. Hall.  Before I ask you how you plead, you have the

3     right to speak with your attorney.

4          Do you wish to speak with your attorney?

5          THE DEFENDANT:  Yes, just for a second.

6          (Discussion held off the record.)

7          THE DEFENDANT:  Yeah, that's fine.

8          THE COURT:  Okay.  And you can also ask me any

9     questions before I ask you how you plead.

10          Do you have any questions for me, Mr. Hall?

11          THE DEFENDANT:  I think everything has been

12     answered pretty much, ma'am.

13          THE COURT:  Okay.  Mr. Hall, now that I've advised

14     you of your rights and have received evidence as to your

15     competence and as to the factual basis for a guilty plea,

16     how do you plead to Counts 1 and 2 of the indictment, guilty

17     or not guilty?

18          THE DEFENDANT:  Guilty, Your Honor.

19          THE COURT:  And are you pleading guilty, Mr. Hall,

20     because you are, in fact, guilty of those offenses?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  It is my finding that the defendant,

23     Hargis Hall, is fully competent to and capable of entering

24     an informed plea.  That he is aware of the nature of the

25     charges brought against him and the consequences of his

34

1    plea.  That there is a factual basis for Mr. Hall's plea.

2    And that his plea of guilty to the offenses charged in

3    Counts 1 and 2 of the indictment is a knowing and voluntary

4    plea that is supported by an independent basis in fact as to

5    each of the essential elements of the offenses charged.

6         I therefore will recommend that the district judge

7    approve the plea agreement, accept Mr. Hall's plea and

8    adjudge him guilty of the offenses charged in Counts 1 and 2

9    of the indictment.

10        Mr. Hall, the court will ask for a presentence

11   investigation report to be prepared prior to sentencing.  It

12   is in your best interest to cooperate with the probation

13   office in providing information that they may request for

14   the report since it will be an important factor in the

15   decision as to what your sentence will be.

16        You and your counsel will have a right and an

17   opportunity to examine the report and commented on --

18   comment on it at the time of sentencing.

19        Also, if you are interviewed by the probation

20   office, you have a right to have your attorney present with

21   you during the interview.

22        The sentencing hearing is set for 10 a.m. on

23   November 19th, 2019, before Judge Sara Lioi.  And that will

24   take place on the fifth floor of this courthouse in Judge

25   Lioi's courtroom.

1            Mr. Hall, you were previously ordered detained,

2    and that order will remain in effect.  So at this time, you

3    will remanded to the custody of the United States Marshal

4    pending your sentence.

5            THE CLERK:  All rise.  Court is adjourned.

6        (Thereupon, proceedings concluded at 2:55 p.m.)

7                            - - -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

C E R T I F I C A T E

2

3       I certify that the foregoing is a correct transcript,

4   to the best of my ability, transcribed from a digital

5   audio recording from the record of proceedings in the

6   above-entitled matter.

7

8           /s/ Mary L. Uphold          August 13, 2019
            Mary L. Uphold, RDR, CRR      Date
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25